UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————

REPUBLIC OF KAZAKHSTAN ET AL.,
                    Plaintiffs,                    21-cv-3507 (JGK)

       - against -                                 OPINION AND ORDER

DANIEL CHAPMAN ET AL.,
                    Defendants.
————————————————————————

JOHN G. KOELTL, District Judge:

       The plaintiffs, the Republic of Kazakhstan ("Kazakhstan")

and Outrider Management, L.L.C. ("Outrider"), brought this

action in the New York State Supreme Court against the

defendants, Daniel Chapman, Argentem Creek Holdings LLC

("Holdings"), Argentem Creek Partners LP ("Partners"),

Pathfinder Argentem Creek GP LLC ("Pathfinder"), and ACP I

Trading LLC ("ACP"). ECF No. 1-1. The plaintiffs alleged that

the defendants committed frauds that resulted in Kazakhstan's

being forced to arbitrate a meritless action, and in Outrider's

entering into an agreement that was ultimately to its detriment.

Id. The defendants removed the case to this Court on the grounds

that the Federal Arbitration Act provided for removal. ECF No.

1.

       Three motions are now before the Court: the defendants'

motion to dismiss Kazakhstan's claims, ECF No. 53; the

defendants' motion to compel arbitration of and dismiss

Outrider's claims, ECF No. 57; and the plaintiffs' motion to

remand the action to the New York State Supreme Court, ECF No. 61. For the following reasons, the plaintiffs' motion to remand is **granted** as to the claims by Kazakhstan and **denied** as to the claims by Outrider. The defendants' motion to dismiss Kazakhstan's claims is **denied** without prejudice. The defendants' motion to compel arbitration of and dismiss Outrider's claims is **granted** insofar as it seeks to compel arbitration of Outrider's claims, and **denied** insofar as it seeks to dismiss them.

I.

This case arises out of investments by a Moldovan family, the Statis, in oil and gas assets in Kazakhstan. In 2000, Kazakhstan granted to two companies owned by the Statis the right to "explore and develop various oil and gas fields located in the country." Stati v. Republic of Kazakhstan, 302 F. Supp. 3d 187, 192 (D.D.C. 2018), aff'd, 773 F. App'x 627 (D.C. Cir. 2019).[1]

In 2006–07, as part of the financing of those projects, the Statis issued a series of notes (the "Notes") through their company Tristan Oil Ltd. Second Amended Complaint (the "Complaint"), ECF No. 47, ¶¶ 12–16. In the Complaint, the plaintiffs allege that Black River Asset Management LLC ("Black River"), of which Mr. Chapman was a Senior Managing Director,

---

[1] Unless otherwise noted, this Opinion omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

and Outrider purchased some of these Notes. The Complaint alleges that Holdings and Partners, two of the named defendants, are spin-offs from Black River and that Black River no longer exists. Id. ¶¶ 11-12. The plaintiffs allege that Partners is the general manager of ACP, and that ACP is controlled by Mr. Chapman. Id. The plaintiffs allege that the Statis "engag[ed] in multiple fraud[s]" to embezzle the funds obtained from the Note issuance. Id. ¶ 20. On July 1, 2010, the Statis defaulted on the Notes.

Three weeks later, the Statis brought an arbitration against Kazakhstan, alleging that Kazakhstan had "engaged in a campaign of harassment and illegal acts" which "destroy[ed] both the market value and alienability of" the Statis' investments, and which culminated in Kazakhstan's unilaterally terminating the Statis' mineral rights, "the illegal expropriation of [the Statis'] Kazakh investments, and the subsequent commandeering of [the Statis'] offices by" Kazakh officials. Stati, 302 F. Supp. at 192-93.

The plaintiffs allege that Mr. Chapman learned of the frauds in 2011, but that "rather than taking legal action against the Statis, Chapman decided to conspire with and support the Statis in the perpetuation of their fraudulent scheme." Compl. ¶ 30.

In 2012, some of the holders of the Notes "signed an agreement with the Statis to share in the proceeds of any arbitral award against" Kazakhstan "[i]n exchange for forbearing from prosecuting legal claims . . . against the Statis" (the "Sharing Agreement"). Compl. ¶¶ 31, 33; see Baldini Decl. in Support of Mot. to Dismiss Ex. 3, ECF No. 34-3, Sharing Agreement. The signatories included Outrider and Black River. Compl. ¶ 31. The plaintiffs allege that Mr. Chapman encouraged holders of the Notes to "enter into the Sharing Agreement and thereby align with the Statis rather than exercise their legal rights against the Statis or pursue alternative courses of action." Compl. ¶ 32.

In 2013, the arbitral tribunal issued an award in the Statis' favor against Kazakhstan in the amount of $497,685,101. Stati, 302 F. Supp. at 193. The award was upheld by the Swedish Supreme Court against arguments by Kazakhstan that the award was fraudulently obtained. Id. at 196. Courts in Belgium, Italy, and the Netherlands have rejected Kazakhstan's arguments about fraud. The United States District Court for the District of Columbia confirmed the award, id. at 209, and the Court of Appeals for the District of Columbia Circuit affirmed that judgment. Stati, 773 F. App'x at 627. Kazakhstan has not yet paid any of the arbitral award.

4

The plaintiffs brought this action against the defendants in the New York State Supreme Court. Kazakhstan and Outrider each allege three claims against all the defendants: civil conspiracy to commit fraud, aiding and abetting wrongful conduct, and unlawful means under English law. The plaintiffs allege the following relationship among the defendants:



Compl. ¶ 11.

The defendants sought from the United States District Court for the District of Columbia an antisuit injunction enjoining this suit from proceeding in the New York State Supreme Court, which was denied. Stati v. Republic of Kazakhstan, No. 14-cv-1638, ECF No. 172 (D.D.C. Mar. 19, 2021). The defendants then removed the case to this Court on the grounds that the

Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, as implemented at 9 U.S.C. §§ 201-208 (the "Convention"), provided for removal. The defendants now move to dismiss Kazakhstan's claims. The defendants also move to compel arbitration of and to dismiss Outrider's claims on the basis of an arbitration clause in the Sharing Agreement. The plaintiffs move to remand the action to the New York State Supreme Court on the grounds that this Court lacks subject matter jurisdiction.

For the following reasons, the plaintiffs' motion to remand is **granted** as to the claims by Kazakhstan and **denied** as to the claims by Outrider. The defendants' motion to dismiss Kazakhstan's claims is **denied** as moot. The defendants' motion to compel arbitration of and to dismiss Outrider's claims is **granted** insofar as it seeks to compel arbitration of Outrider's claims, and **denied** insofar as it seeks to dismiss them.

## II. Claims by Kazakhstan

The plaintiffs move to remand the claims in this case back to the New York State Supreme Court, where the case was initially brought. Kazakhstan and Outrider stand in very different positions because Outrider is party to the Sharing Agreement, which contains an arbitration provision, and the defendants do not move to compel arbitration of Kazakhstan's claims. Therefore, the claims of Kazakhstan will be treated

separately. The Court will deal initially with the motion to remand Kazakhstan's claims to the New York State Supreme Court.

On a motion to remand for lack of subject matter jurisdiction, the defendant bears the burden of establishing the propriety of removal. Calif. Pub. Emps.' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir. 2004). Courts assume the truth of non-jurisdictional facts alleged in the complaint, but may consider materials outside the complaint, such as documents attached to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis. See BGC Partners, Inc. v. Avison Young (Canada), Inc., 919 F. Supp. 2d 310, 312 n.3 (S.D.N.Y. 2013).

To hear a case removed from state court, a federal court must have both subject matter jurisdiction and removal jurisdiction. Holzer v. Mondadori, No. 12-cv-5234, 2013 WL 1104269, at *6 (S.D.N.Y. Mar. 14, 2013). The defendants argue that the Federal Arbitration Act — more specifically, 9 U.S.C. §§ 203 and 205 — provides both subject matter and removal jurisdiction over the claims brought by Kazakhstan, because of the claims' relation to the arbitral award in the dispute between Kazakhstan and the Statis.

Chapter 2 of the Federal Arbitration Act enforces the Convention. See 9 U.S.C. § 201. There is no dispute that the Kazakhstan arbitral award is covered by the Convention. 9 U.S.C.

§ 202, entitled "Agreement or award falling under the Convention," provides:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, . . . falls under the Convention.[2]

Section 203, entitled "Jurisdiction; amount in controversy," provides:

> An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

Section 205, entitled "Removal of cases from State courts," provides:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to [federal court] . . . . The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.

In this case, the parties do not dispute that § 205 creates removal jurisdiction. The question, therefore, is whether there is subject matter jurisdiction. In support of subject matter

---

[2] Section 202 excludes agreements and awards that arise out of relationships that are "entirely between citizens of the United States" and do not "involve[] property located abroad, envisage[] performance or enforcement abroad, or ha[ve] some other reasonable relation with one or more foreign states." It is plain that this exclusion does not apply.

jurisdiction, the defendants make two arguments. First, the
defendants argue that § 205 creates not only removal
jurisdiction but also subject matter jurisdiction for cases that
are "relate[d] to an arbitration agreement or award falling
under the Convention." Second, the defendants argue that § 203's
creation of subject matter jurisdiction extends to this case.
Neither argument is persuasive.

**A.**

The defendants' first argument is that § 205 creates not
only removal jurisdiction but also subject matter jurisdiction
for all cases that so much as "relate[] to an arbitration
agreement or award falling under the Convention." Because this
case is "related to" such an arbitration agreement or award, the
defendants argue that there is subject matter jurisdiction under
§ 205. This argument is not persuasive.

The plain language of the statute suggests that § 205 does
no more than authorize removal. On its face, § 203 creates
jurisdiction: it provides that federal courts "shall have
original jurisdiction" over certain actions. Section 205,
meanwhile, on its face authorizes removal: it provides that
certain actions may be removed to federal court. The word
jurisdiction does not appear in § 205. This contrast strongly
suggests that § 203 serves to create subject matter
jurisdiction, whereas § 205 serves only to authorize removal.

See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC, 140 S. Ct. 1637, 1644 (2020) (so parsing the statute). That conclusion is especially compelling in light of the distinction between subject matter jurisdiction and removal jurisdiction that appears elsewhere in the United States Code. Compare, e.g., 28 U.S.C. §§ 1331–1332 (creating jurisdiction) with 28 U.S.C. § 1441 (providing for removal); 12 U.S.C. § 1819(b)(2)(A) (creating jurisdiction for suits to which the Federal Deposit Insurance Corporation ("FDIC") is a party) with 12 U.S.C. § 1819(b)(2)(B) (providing for removal by the FDIC).

The defendants' interpretation of § 205 is incongruous in that it would imply that federal courts have more jurisdiction to hear cases removed to federal court than cases brought originally in federal court. The more natural reading of § 205 is that it permits removal and explicitly abrogates the well-pleaded complaint rule because the second sentence of § 205 provides that "the ground for removal . . . need not appear on the face of the complaint." But jurisdiction must still be found under § 203.

This conclusion is consistent with the weight of the authority on this issue in the Second Circuit. See, e.g., Albaniabeg Ambient Sh.p.k. v. Enel S.p.A., 169 F. Supp. 3d 523, 528 (S.D.N.Y. 2016) (collecting cases); see also Seed Holdings, Inc. v. Jiffy Int'l AS, 5 F. Supp. 3d 565, 575 (S.D.N.Y. 2014)

(treating subject matter jurisdiction under § 203 as distinct from removal jurisdiction under § 205); Holzer, 2013 WL 1104269, at *6 (same); Goel v. Ramachandran, 823 F. Supp. 2d 206, 210-220 (S.D.N.Y. 2011).

The defendants argue that it is necessary to read § 205 as creating a broader scope of federal jurisdiction because otherwise it is superfluous with 28 U.S.C. § 1441. Section 1441 is a general removal provision, authorizing the removal of cases "of which the district courts of the United States have original jurisdiction." Because § 203 creates original jurisdiction over an action or proceeding falling under the Convention, 28 U.S.C. § 1441 already authorizes removal of all cases that fall under the Convention.

But § 205 is not redundant with 28 U.S.C. § 1441. Section 205 authorizes removal at any time before trial. In contrast, 28 U.S.C. § 1446 — which provides default procedures for removal — requires that removal occur within 30 days of service of the initial pleading from which it can be ascertained that the case is removable. 28 U.S.C. § 1446(b)(1), (3). Section 205 also provides for removal in cases where the basis for removal does not appear on the face of the complaint. It thereby overrides the requirement that a federal claim appear on the face of the complaint for removal under 28 U.S.C. § 1441. Vaden v. Discover

Bank, 129 S. Ct. 1262, 1271 n.9 (2009). Section § 205 therefore is not repetitive of 28 U.S.C. § 1441.

In sum, § 205 does not create subject matter jurisdiction over the claims by Kazakhstan.

**B.**

The defendants next argue that there is subject matter jurisdiction under 9 U.S.C. § 203. This argument is also unconvincing.

The Court of Appeals for the Second Circuit has suggested that § 203 is a relatively narrow jurisdictional grant, limited to "compel[ling] arbitration or to enforc[ing] an arbitral award." Int'l Shipping Co., S.A. v. Hydra Offshore, Inc., 875 F.2d 388, 391 n.5 (2d Cir. 1989). Although subsequent cases have construed § 203 somewhat more broadly, these expansions have remained tightly intertwined with the arbitration proceedings or awards. See, e.g., Borden, Inc. v. Meiji Milk Prod. Co., 919 F.2d 822, 829 (2d Cir. 1990) (finding jurisdiction to issue "preliminary injunction[s] in aid of arbitration"); Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 391 n.6 (2d Cir. 2011) (finding jurisdiction to "stay[] incompatible arbitral proceedings"); Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co., 668 F.3d 60, 71 (2d Cir. 2012) (finding jurisdiction to vacate arbitral awards).

12

And indeed, district courts in this circuit have cabined § 203 to those kinds of cases. For example, in Goel, 823 F. Supp. 2d at 217, the court refused to construe § 203 as conferring jurisdiction to stay litigation where there was "no plausible reason to believe that a stay would affect the speed" of the resolution of a pending arbitration proceeding "or have any effect on the recovery of the award." Similarly, in Albaniabeg, 169 F. Supp. 3d at 530, the court found that § 203 did "not provide subject matter jurisdiction over actions to enforce a foreign court's judgment, even where a party contend[ed] that the foreign court's judgment is inconsistent with an earlier arbitration award or an agreement to arbitrate." In this case, as in Goel and Albaniabeg, the connection between the litigation and the arbitral award is so tenuous that § 203 cannot confer jurisdiction over the claims by Kazakhstan. Kazakhstan does not seek to vacate or enforce the arbitral award against it or to obtain any relief that would affect the validity of that award, which has been confirmed repeatedly.[3]

---

[3] The defendants rely on cases outside this Circuit to argue that the scope of § 203 should be broader. See, e.g., Inversiones Y Procesadora Tropical Inprotsa, S.A. v. Del Monte Int'l GmbH, 921 F.3d 1291 (11th Cir. 2019); Stemcor USA Inc. v. CIA Siderurgica Do Para Cosipar, 927 F.3d 906 (5th Cir. 2019). But those cases are neither binding nor persuasive.

Because neither § 203 nor § 205 confers subject matter jurisdiction, the Court lacks original subject matter jurisdiction over Kazakhstan's claims.

### C.

The defendants make a passing argument that the Court has supplemental jurisdiction over the claims by Kazakhstan. See 28 U.S.C. § 1367(a). The claims by Kazakhstan do appear to arise from the same "common nucleus of operative fact" as the claims by Outrider, such that they "form part of the same case or controversy" under 28 U.S.C. § 1367(a). See City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 165 (1997). For the reasons explained below, the Court has original jurisdiction over the claims by Outrider; it may therefore exercise supplemental jurisdiction over the claims by Kazakhstan. See Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176, 1181 (7th Cir. 1993); Doe v. Ciolli, 611 F. Supp. 2d 216, 218 (D. Conn. 2009); Jerry Kubecka, Inc. v. Avellino, 898 F. Supp. 963, 972 (E.D.N.Y. 1995); see also Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 560 (2005) (noting that "§ 1367 confers supplemental jurisdiction over claims by" plaintiffs joined pursuant to Federal Rule of Civil Procedure 20, which authorizes joinder of plaintiffs who assert a right to relief arising out of the same transaction or occurrence and share a question of law or fact).

However, § 1367(c) authorizes the Court to "decline to exercise supplemental jurisdiction" over a claim if it "substantially predominates over the claim or claims over which the district court has original jurisdiction," if "the district court has dismissed all claims over which it has original jurisdiction," or if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." In this case, the Court has jurisdiction over the claims by Outrider only to the extent of compelling arbitration. See Holzer, 2013 WL 1104269, at *15. The Court refers Outrider's claims to arbitration. That would leave only the non-federal claims by Kazakhstan to proceed in this Court. Therefore, the state law claims would predominate and judicial economy dictates that those claims be heard in state court. See Norman v. NYU Langone Health Sys., No. 20-3624, 2021 WL 5986999, at *5 (2d Cir. Dec. 17, 2021) (affirming district court's decision not to exercise supplemental jurisdiction when federal claims were dismissed).

Accordingly, the Court will not exercise supplemental jurisdiction over the claims by Kazakhstan. The plaintiffs' motion to remand is therefore **granted** with respect to the claims by Kazakhstan.

### D.

The defendants also move to dismiss the claims by Kazakhstan. Because the motion to remand is granted with respect

to the claims by Kazakhstan, the motion to dismiss those claims
is **denied** without prejudice. The defendants can raise any
motions to dismiss Kazakhstan's claims in the state court.

### III. Claims by Outrider

The plaintiffs move to remand the claims by Outrider to the
New York State Supreme Court. The defendants move to compel
arbitration of Outrider's claims. For the following reasons, the
plaintiffs' motion to remand the claims by Outrider is **denied**,
and the defendants' motion to compel arbitration of those claims
is **granted.**

### A.

The plaintiffs argue that the claims brought by Outrider
should be remanded to the New York State Supreme Court because
this Court lacks subject matter jurisdiction over them. This
argument is without merit.

This Court has jurisdiction under § 203 to compel
arbitration pursuant to an arbitration agreement that falls
under the Convention. See Intertec Contracting A/S v. Turner
Steiner Int'l, S.A., 6 F. App'x 61, 62 (2d Cir. 2001).

In this case, the defendants seek to compel arbitration
pursuant to the Sharing Agreement, to which the Statis and
Outrider, among others, were signatories. The Statis are
Moldovan nationals. Compl. ¶ 14. Outrider is incorporated and
has its principal place of business in California. Id. ¶ 4. The

Sharing Agreement is therefore not entirely between citizens of the United States. The Sharing Agreement relates to the Statis' investment in oil and gas assets and debt issued in connection with those investments; this readily meets the "commercial" requirement. The plaintiffs do not appear to dispute that these criteria are met. Because the defendants make a good faith argument that they are entitled to seek arbitration against Outrider pursuant to the Sharing Agreement, the defendants have, for subject matter jurisdiction purposes, adequately pleaded that they are seeking to compel arbitration pursuant to an agreement that falls under the Convention. See Bitumenes Orinoco, S.A. v. New Brunswick Power Holding Corp., No. 05-cv-9485, 2007 WL 485617, at *1, *11 n.10 (S.D.N.Y. Feb. 13, 2007).

The plaintiffs argue that the motion to compel arbitration is without merit, and therefore cannot support jurisdiction. But these arguments go to the merits of the motion to compel arbitration, not to the Court's jurisdiction. Cf. Sarhank Grp. v. Oracle Corp., 404 F.3d 657, 660 (2d Cir. 2005). In any event, for the reasons given below, the motion to compel arbitration of Outrider's claims is, in fact, meritorious. Accordingly, the Court has subject matter jurisdiction.

**B.**

**1.**

On a motion to compel arbitration, "courts apply a standard similar to that applicable for a motion for summary judgment." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016). Thus, a court should "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." Id. If there is no "genuine issue of material fact" as to the arbitrability of the dispute, the Court may decide the motion without a trial. Schnabel v. Trilegiant Corp., 697 F.3d 110, 113 (2d Cir. 2012).

The question of whether an agreement to arbitrate was formed must be decided by the Court, as opposed to the arbitrator. Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299 (2010); Dedon GmbH v. Janus et Cie, 411 F. App'x 361, 363 (2d Cir. 2011). The defendants bear the burden of showing that there existed an agreement to arbitrate. Hines v. Overstock.com, 380 F. App'x 22, 24 (2d Cir. 2010).

If the Court is satisfied that an agreement to arbitrate has been formed, the Court must then determine whether the agreement clearly and unmistakably delegates to the arbitrator other issues of arbitrability, such as enforceability and applicability. VRG Linhas Aereas S.A. v. MatlinPatterson Glob.

Opportunities Partners II L.P., 717 F.3d 322, 326 (2d Cir.
2013); 1199SEIU United Healthcare Workers E. v. PSC Cmty.
Servs., 520 F. Supp. 3d 588, 606 (S.D.N.Y. 2021). The defendants
also bear the burden of showing that the agreement effects such
a delegation. See First Options of Chicago, Inc. v. Kaplan, 514
U.S. 938, 944-45 (1995) (noting the presumption that the Court
decides arbitrability). Only if an agreement has been formed and
the agreement clearly and unmistakably delegates the issue of
arbitrability to the arbitrator may the Court compel arbitration
of arbitrability. See id. at 944-47; VRG, 717 F.3d at 326.

As an initial matter, an agreement to arbitrate has been
formed. Outrider does not contest that it was a party to the
Sharing Agreement, or that the Sharing Agreement contained an
arbitration clause.

Because an agreement to arbitrate was formed, the next
question is whether the arbitration agreement clearly and
unmistakably delegates to the arbitrator the question of
arbitrability. The Sharing Agreement provides:

> Each of the Parties agrees that any suit, action or
> proceeding arising out of or based upon th[e Sharing]
> Agreement or the transactions contemplated hereby shall
> be finally settled under the Rules of Arbitration of the
> International Chamber of Commerce (the "ICC Rules").

Sharing Agreement § 18(k). The ICC Rules, in turn, provide that:

> [I]f any party raises one or more pleas concerning the
> existence, validity or scope of the arbitration
> agreement . . ., the arbitration shall proceed and any

19

> question of jurisdiction . . . shall be decided directly
> by the arbitral tribunal . . . . [A]ny decision as to
> the jurisdiction of the arbitral tribunal . . . [will]
> be taken by the arbitral tribunal itself.

ICC Rules, Arts. 6.3, 6.5. The defendants argue that this

provision creates the requisite delegation. Incorporating

arbitration rules that empower an arbitrator to decide

arbitrability typically evinces the requisite intent to delegate

arbitrability to an arbitrator. See Contec Corp. v. Remote

Solution Co., 398 F.3d 205, 208 (2d Cir. 2005).

The plaintiffs argue that the agreement does not

sufficiently clearly delegate to an arbitrator the arbitrability

of a dispute with a non-signatory. Accordingly, the next

"question before the Court is whether it or an arbitrator

determines whether . . . [the defendants are] entitled to

enforce the Arbitration Provision." Citadel Servicing Corp. v.

Castle Placement, LLC, 431 F. Supp. 3d 276, 286 (S.D.N.Y. 2019).

If the defendants' right to seek arbitration is a question of

scope, it is for the arbitrator; but if it speaks to whether

Outrider has consented to arbitrating arbitrability, it is for

the Court.

The two cases from the Court of Appeals for the Second

Circuit that most closely inform this question are Contec Corp.

v. Remote Solution Co., 398 F.3d 205 (2d Cir. 2005), and

Republic of Iraq v. BNP Paribas USA, 472 F. App'x 11 (2d Cir. 2012).

Contec involved a non-signatory successor (Contec Corporation) to a signatory (Contec L.P.) to an agreement with Remote Solution, which agreement contained an arbitration clause. Contec, 398 F.3d at 207. Despite Contec's "change in corporate form," the parties "continued to conduct themselves as subject to the" agreement. Id. at 209. When a dispute arose between the parties, Contec Corporation sought to compel arbitration against Remote Solution. Id. at 207. The court held that, subject to a threshold finding that "the parties have a sufficient relationship to each other and to the rights created under the agreement," the question of whether a non-signatory could seek arbitration was a question for the arbitrator. Id. at 209-11. Because a sufficiently close relationship existed, the court compelled arbitration of arbitrability. Id.

In Iraq, by contrast, the Court of Appeals determined that the court rather than the arbitrator should decide the question of whether a non-signatory (in that case, Iraq) had the right to compel arbitration pursuant to a contract between the United Nations and BNP Paribas. Iraq, 472 F. App'x at 13-14. The Court of Appeals did so on two grounds. First, relying on the agreement's language that disputes would "be referred by either Party to arbitration," the court reasoned that the agreement did

not clearly and unmistakably empower an arbitrator to "determine its own jurisdiction with respect to any dispute raised by a non-party." Id. at 12-13. Second, the court distinguished Iraq's position as a purported third-party beneficiary from the close relationship that was present in Contec. Id. at 13.

These cases imply a two-part inquiry: first, whether the language of the arbitration agreement permits or precludes invocation by non-signatories; and second, whether a threshold of "relational sufficiency" is present. If both of these requirements are met, the question of a whether a non-signatory may invoke arbitration against a signatory is for the arbitrator. See also, e.g., Int'l Eng'g & Constr. S.A. v. Baker Hughes, 399 F. Supp. 3d 194, 201-03 (S.D.N.Y. 2019); Mackris v. O'Reilly, No. 17-cv-9483, 2019 WL 11000205, at *5-7 (S.D.N.Y. Mar. 6, 2019); Dhue v. O'Reilly, No. 18-cv-2547, 2018 WL 11222900, at *5 (S.D.N.Y. Oct. 10, 2018).

In this case, both requirements are met. First, the language of the agreement provides for arbitration of "any suit, action or proceeding arising out of or based upon" the agreement. The agreement does not provide that it can be invoked only a by a party to the agreement.

Second, Outrider and all of the defendants "have a sufficient relationship to each other and to the rights created under the agreement." Contec, 398 F.3d at 209. The factors

relevant to the relational sufficiency determination are "the
relationship among the parties, the contracts they signed . . . ,
and the issues that have arisen." Id. Relational sufficiency is
a less demanding inquiry than arbitrability, because otherwise
the Court may be trenching on the merits of the controversy
which is indisputably left to the arbitrator. See Int'l Eng'g,
299 F. Supp. 3d at 202.

The Complaint alleges that Mr. Chapman wholly owns
Holdings, which in turn is the controlling owner of Partners,
which is the general manager of ACP; for good measure, the
Complaint alleges that Mr. Chapman controls ACP. Compl. ¶ 11.
Holdings and Partners are alleged to have been formed in
connection with a spin-off of Black River, a onetime Tristan
Noteholder and an original signatory of the Sharing Agreement
with whom Outrider agreed to arbitrate on matters arising out of
or based on the Sharing Agreement. Id. ¶¶ 11, 17. Mr. Chapman
was an officer of Black River, in which capacity he is alleged
to have committed frauds which led to Outrider's signing of the
Sharing Agreement. Id. ¶¶ 11, 30. Pathfinder is alleged to be
controlled by Mr. Chapman. Id. ¶ 11. Moreover, the Complaint
treats the defendants as a single unit. Having made these
allegations, the plaintiffs cannot now disavow them when they
become inconvenient: they are "judicial admissions by which
[the] plaintiff[s are] bound through the course of the

proceeding." Zambrana v. Pressler & Pressler, LLP, No. 16-cv-2907, 2016 WL 7046820, at *3 (S.D.N.Y. Dec. 2, 2016) (compelling the plaintiff to arbitrate on the basis of allegations in a complaint). This is especially true given that the defendants "do not contest Mr. Chapman's relationship with Black River or certain of the" corporate defendants. ECF No. 73 at 6. There is therefore a sufficiently close relationship among the parties so that Outrider may be compelled to submit the arbitrability of its claims against the defendants to the arbitrator.

Because the facts material to compelling arbitration of arbitrability are established on the record before the Court, the plaintiffs' request for discovery is denied.

Because the parties have properly delegated to the arbitrator the issue of the arbitrability of Outrider's claims, the Court does not address the question whether each of the defendants may seek arbitration of their claims, see Contec, 398 F.3d 205 at 211, or other arguments relating to the scope of the agreement to arbitrate. See Henry Schein, Inc. v. Archer and White Sales, Inc., 139 S. Ct. 524, 529 (2019). Those questions are for the arbitrator to decide. See id.; Contec, 398 F.3d 205 at 211.

For the foregoing reasons, the motion to compel arbitration of Outrider's claims is **granted.**

2.

The defendants seek dismissal of the claims to be arbitrated. Where no party has requested a stay, the Court has discretion to stay or to dismiss the action. Charter Commc'ns, Inc. v. Garfin, No. 20-cv-7049, 2021 WL 694549, at *14 (S.D.N.Y. Feb. 23, 2021); compare Benzemann v. Citibank N.A., 622 F. App'x 16, 18 (2d Cir. 2015) (finding dismissal not to be erroneous where no party had requested a stay), with Virk v. Maple-Gate Anesthesiologists, P.C., 657 F. App'x 19, 20-21 (2d Cir. 2016) (finding dismissal to be an abuse of discretion where any party had requested a stay); see also 9 U.S.C. § 3 ("[T]he court . . ., upon being satisfied that the . . . proceeding is referable to arbitration . . ., shall on application of one of the parties stay the trial of the action until such arbitration has been had." (emphasis added)). Nonetheless, because a stay "allow[s] the Court, at a later stage, to address any claim or lingering issue that is not resolved in arbitration," courts "regularly stay, rather than dismiss, complaints subject to an arbitration agreement." Charter, 2021 WL 694549, at *14. "Moreover, a stay is particularly appropriate when the parties must arbitrate the question of the arbitrability, since any claims that the arbitrator determines are not arbitrable would proceed before" a court. Al Thani v. Hanke, No. 20-cv-4765, 2021 WL 4311391, at *8 (S.D.N.Y. Sept. 21, 2021). For these reasons,

the Court will stay the claims by Outrider. The motion to dismiss Outrider's claims is **denied.**

### Conclusion

The Court has considered all of the arguments of the parties. To the extent not specifically discussed above, the arguments are either moot or without merit. In summary, the plaintiffs' motion to remand is **granted** as to the claims by Kazakhstan and **denied** as to the claims by Outrider. The defendants' motion to dismiss Kazakhstan's claims is **denied** without prejudice as moot. The defendants' motion to compel arbitration of and to dismiss Outrider's claims is **granted** insofar as it seeks to compel arbitration of Outrider's claims, and **denied** insofar as it seeks to dismiss them. Outrider's claims are stayed pending the outcome of the arbitration concerning those claims. The Clerk is directed to close all open motions.[4]

---

[4] The parties' requests for oral argument are denied. This is not a case that would benefit from argument.

The defendants are directed to prepare a proposed Order by **February 14, 2022**, and the plaintiffs may file any response by **February 16, 2022**.

SO ORDERED.

Dated:      New York, New York
            February 10, 2022

                                    _____
                                    John G. Koeltl
                            United States District Judge